IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BROADCAST MUSIC INC., et al.,

    Plaintiffs,

    v.

ANTIGUA CANTINA & GRILL, LLC d/b/a ANTIGUA CANTINA & GRILL; and FELIPE OLVERA, JR., individually,

    Defendants.

                          /

Case No. 2:12-cv-1196 KJM DAD

FINDINGS AND RECOMMENDATIONS

This matter came before the court on October, 5, 2012, for hearing on plaintiff's motion for default judgment. (Doc. No. 10.) Karen Frank, Esq. appeared telephonically for plaintiffs. No appearance was made by, or on behalf of, any defendant. Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that the motion for default judgment be granted.

PROCEDURAL BACKGROUND

Plaintiffs commenced this action on May 3, 2012, by filing a complaint and paying the required filing fee. Despite being served with process, defendants failed to appear in this action, (Doc. Nos. 7), and pursuant to plaintiffs' request the Clerk of the Court entered defendants' default. (Doc. Nos. 8 & 9.) On August 17, 2012, plaintiffs filed the motion for

1

default judgment now pending before the court, (Doc. No. 10), and on August 24, 2012, noticed it to be heard before the undersigned pursuant to Local Rule 302(c)(19). (Doc. No. 12.)

The matter came before the undersigned on October 5, 2012. (Doc. No. 14.) Despite being served with all papers filed in connection with the motion, there was no opposition filed nor appearance made by or on behalf of either defendant at the October 5, 2012 hearing.[1] (Doc. No. 10-9; Doc. No. 12.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing. See Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).

/////

---

[1] While the defendants in this case were served by plaintiff with the motion for entry of default judgment, such service generally is not required. See Fed. R. Civ. P. 55(b)(2) (requiring that written notice of an application for default judgment be served upon the party against whom judgment is sought only if that party "has appeared in the action"); Local Rule 135(d) (excusing parties from serving documents submitted to the court upon "parties held in default for failure to appear"); see also Wilson v. Moore & Associates, Inc., 564 F.2d 366, 368-69 (9th Cir. 1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action. The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit."). Out of an abundance of caution, plaintiffs prudently served defendants with all papers related to the pending motion for entry of default judgment.

Granting or denying default judgment is within the court's sound discretion, see Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice, ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

Here, according to the allegations found in the complaint plaintiff, Broadcast Music, Inc. ("BMI"), has been granted the right to license the public performance rights of 7.5 million copyrighted musical compositions, including those at issue in this action. The other non-BMI plaintiffs are the owners of the copyrighted musical compositions. Defendant Antigua Cantina & Grill, LLC is a limited liability company organized under the laws of the State of California, and which operates the Antigua Cantina Grill located in Sacramento, California. Defendant Felipe Olvera, Jr., is the managing member of the Antigua Cantina & Grill, LLC. (Compl. (Doc. No. 1) at 2-3.[2])

Attached to plaintiffs' complaint, and incorporated within, is a "Schedule" identifying the musical compositions whose copyrights were infringed by defendants and provides information on the six claims of copyright infringement at issue in this action. Each numbered claim identified in the Schedule has the following eight lines of information: Line 1 provides the claim number; Line 2 lists the title of the musical composition related to that claim; Line 3 identifies the writer(s) of the musical composition; Line 4 identifies the publisher(s) of the

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

musical composition and the plaintiff(s) in this action pursuing the claim at issue; Line 5 provides the date on which the copyright registration was issued for the musical composition; Line 6 indicates the copyright registration number(s) for the musical composition; Line 7 shows the date(s) of infringement; and Line 8 identifies where the infringement occurred.[3] (Id. at 6-7.)

Plaintiffs' complaint alleges against defendants six claims of willful copyright infringement, in violation of 17 U.S.C. § 101, et seq., and requests that defendants be enjoined from infringing on plaintiffs' copyrighted music, be ordered to pay statutory damages pursuant to 17 U.S.C. § 504(c), and be ordered to pay reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505. (Compl. (Doc. No. 1) at 1-5.)

Through its motion for default judgment, plaintiffs seeks entry of default judgment enjoining defendants from infringing on plaintiffs' copyrighted musical compositions and ordering defendants to pay $18,000.00 in statutory damages pursuant to 17 U.S.C. § 504(c), $6,425 in attorney's fees and costs pursuant to 17 U.S.C. § 505 and post-judgment interest on these awards pursuant to 28 U.S.C. § 1961. (MDJ (Doc. No. 10) at 6.)

/////

---

[3] According to the sworn declaration of Lawrence Stevens, BMI's Assistant Vice President, filed as an exhibit to the motion for default judgement, prior to April 2010, BMI learned that Antigua Cantina & Grill was offering musical entertainment without a license from BMI and without permission from the copyright owners whose music was being publicly performed. On April 27, 2010, BMI sent a letter to the establishment and advised that a license agreement was required for the performance of BMI licensed music. An informational brochure and a BMI license agreement containing a license fee schedule was enclosed. Defendants did not respond. BMI sent additional letters over the course of the next year. On May 11, 2011, BMI sent defendant Olvera a letter via Fed Ex which instructed him to cease the public performance of BMI-licensed music. Additional letters advising the defendants of their legal obligations were sent on ten more occasions. Moreover, BMI's records indicate that BMI licensing personnel telephoned Antigua Cantina & Grill on eighty-one occasions and on three separate occasions spoke directly with defendant Olvera. Defendants still refused to enter into a licensing agreement. On November 10-11, 2011 and December 16, 2011, BMI authorized Victor Adams to visit the Antigua Cantina & Grill and make audio recordings of the music being publicly performed and to draft Certified Infringement Reports. On February 29, 2012, and March 6, 2012, BMI sent Antigua Cantina & Grill a letter advising it of Adams' investigation demonstrating infringement. Defendants still did not respond. BMI's current annual licensing fee is $3,019.90, and defendants' total estimated unpaid license fee is $9,059.70. (Stevens Decl. (Doc. No. 10-1 at 1-4.)

1    Weighing the factors outlined in Eitel, 782 F.2d at 1471-72, the undersigned has
2 determined that default judgment against defendants is appropriate.  Defendants have made no
3 showing that their failure to respond to the complaint is due to excusable neglect.  Plaintiffs'
4 complaint is sufficient, and there is no reason to doubt the merits of plaintiffs' substantive
5 claims.  In light of the defendants' failure to appear and lack of opposition to plaintiffs' claims,
6 there is no possibility of a dispute concerning the material facts underlying the action.  Through
7 the instant motion, plaintiffs seeks injunctive relief, a modest award of statutory damages,
8 attorney's fees and post-judgment interest.  While recognizing the public policy favoring
9 decisions on the merits, the court finds that a decision on the merits has been rendered impossible
10 by defendants' default.  Because these factors weigh in plaintiffs' favor, the undersigned will
11 therefore recommend that plaintiffs' motion for default judgment be granted.

12    After determining that default judgment is warranted, the court must next
13 determine the terms of the judgment.  Any relief granted may not be different in kind from, or
14 exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c).

15    With respect to plaintiffs' request for injunctive relief, § 502(a) of the Copyright
16 Act permits a court to grant injunctive relief on "such terms as it may deem reasonable to prevent
17 or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "The basis for injunctive relief in
18 the federal courts has always been irreparable injury and the inadequacy of legal remedies."
19 Lucasfilm Ltd. v. Media Market Gp., Ltd., 182 F. Supp.2d 897, 899 (N.D. Cal. 2002) (internal
20 quotations omitted).  "As a general rule, a permanent injunction will be granted when liability
21 has been established and there is a threat of continuing violations."  MAI Systems Corp. v. Peak
22 Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993).

23    Here, the undersigned finds that injunctive relief is appropriate because the failure
24 to issues a permanent injunction will expose plaintiffs to continuing irreparable injury.  In this
25 regard, "[w]ithout such an injunction, [p]laintiffs will need to expend further resources to
26 discover and eliminate [d]efendants' unauthorized public performance of BMI licensed music."

Broadcast Music, Inc. v. Paden, No. 5:11-2199-EJD, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011).  Moreover, defendants' method of "infringement–providing unauthorized public performances of works in the BMI repertoire . . . is easy for [defendants'] to repeat."  Broadcast Music, Inc. v. Kiflit, No. 12-CV-0856-LHK, 2012 WL 4717852, at *3 (N.D. Cal. Oct. 2, 2012).  Accordingly, the undersigned will recommend that plaintiffs' request for a permanent injunction be granted.

With respect to plaintiffs' request for statutory damages, § 504 of the Copyright Act permits a copyright owner to recover:  (1) actual damages and any additional profits of the infringer, or (2) statutory damages amounting to a sum of not less than $750 and not more than $30,000 per copyright infringement, as the Court considers just.  17 U.S.C. §§ 504(a), 504(c).  "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."  Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984).  An award of statutory damages should "not merely compel[ ] restitution of profit and reparation for injury but also . . . discourage wrongful conduct."  F.W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952).

"Courts have consistently held that a statutory damages award three times the amount that the plaintiff would have received in licensing fees is appropriate under § 504(c)."  Broadcast Music, Inc. v. Paden, No. 5:11-2199-EJD, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011).  See also Broadcast Music, Inc. v. Kiflit, No. 12-CV-0856-LHK, 2012 WL 4717852, at *4 (N.D. Cal. Oct. 2, 2012) (awarding "slightly more than three times the cost of the estimated licensing fee" in statutory damages).  Courts have also found it appropriate to award $3,000 per infringement.  See Odnil Music Ltd. v. Katharsis LLC, No. CIV S-05-0545 WBS JFM, 2006 WL 2545869, at *8 (E.D. Cal. July 21, 2006) (awarding $3,000 per infringement).

Here, plaintiffs seek $18,000 in statutory damages, based on an award of $3,000 for each alleged act of infringement.  Plaintiffs have submitted evidence that had defendants entered into a licensing agreement at the time BMI first contacted defendants, the total estimated

1  licensing fee would have cost defendants $9,059.70.  (Stevens Decl. (Doc. No. 10-1) at 4.)  In
2  this regard, the statutory damage award plaintiffs seek is roughly twice the cost of the estimated
3  licensing fee.
4  　　　　　The undersigned finds plaintiffs' requested amount of statutory damages
5  reasonable and appropriate.  Accordingly, the undersigned will recommend that plaintiffs be
6  awarded $18,000 in statutory damages.
7  　　　　　With respect to plaintiffs' request for attorneys' fees and costs, § 505 of the
8  Copyright Act permits courts discretion to award reasonable attorney's fees and the full
9  reimbursement of costs to the prevailing party in a copyright action.  17 U.S.C. § 505.  The Ninth
10  Circuit employs the lodestar approach to determine whether a fee request is reasonable.  Jordan
11  v. Multnomath County, 815 F.2d 1258, 1262-63 (9th Cir. 1987).  "The 'lodestar' is calculated by
12  multiplying the number of hours the prevailing party reasonably expected on the litigation by a
13  reasonable hourly rate."  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).
14  See also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar is deemed to be
15  presumptively reasonable, though the district court has the discretion to consider an upward or
16  downward adjustment.  Camacho, 523 F.3d at 978.
17  　　　　　Here, plaintiffs' motion seeks an award of $6,425 for $585 in costs and $5,840 in
18  attorneys' fees.  (Frank Decl. (Doc. No. 10-7) at 2.)  The attorneys' fee award is comprised of the
19  work of two attorneys, attorney Karen Frank who billed 6.4 hours at a rate of $575 per hour and
20  attorney Jeremiah Burke who billed 7.2 hours at a rate of $300 per hour.  (Id.)
21  　　　　　The undersigned finds the number of attorney hours expended to be reasonable
22  and the hourly rates requested by plaintiffs' attorneys, although perhaps at the high end of the
23  scale, to be reasonable.  See Broadcast Music, Inc. v. Paden, No. 5:11-2199-EJD, 2011 WL
24  6217414, at *5 (N.D. Cal. Dec. 14, 2011) (finding $11,399 to be reasonable amount of attorneys'
25  fees on motion for default judgment involving same plaintiff, same attorneys and similar
26  underlying facts); Shakey's USA, Inc. v. Tutto's Pizza Corp., No. 1:09cv0093 OWW DLB, 2009

WL 3211027, at *6 (E.D. Cal. 2009) (recommending granting motion for default judgment and awarding $23,775.37 in attorneys' fees with rates as high as $475 per hour); <u>Broadcast Music, Inc. v. Colonial Foods, Inc.</u>, No. C-92-4253-DLJ, 1993 WL 87808, at *3 (N.D. Cal. Mar. 17, 1993) (awarding $3,169 in attorneys' fees on motion for default judgment involving same plaintiff and similar facts).  Accordingly, the undersigned will recommend that plaintiffs be awarded $6,425 in attorneys' fees and costs.

Finally, with respect to plaintiffs' request for post-judgment interest, 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  In this regard, "'[u]nder the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory.'" <u>Landstar Ranger, Inc. v. Parth Enterprises, Inc.</u>, 725 F. Supp.2d 916, 924 (C.D. Cal. 2010) (quoting <u>Air Separation, Inc. v. Underwriters at Lloyd's of London</u>, 45 F.3d 288, 290 (9th Cir. 1995)).

Accordingly, the undersigned will recommend that plaintiffs' request for post-judgment interest be granted and that defendants be ordered to pay interest on the full amount of judgment from the date of entry of judgment.  <u>See</u> <u>Broadcast Music, Inc. v. Kiflit</u>, No. 12-CV-0856-LHK, 2012 WL 4717852, at *5 (N.D. Cal. Oct. 2, 2012); <u>Broadcast Music, Inc. v. Paden</u>, No. 5:11-2199-EJD, 2011 WL 6217414, at *6 (N.D. Cal. Dec. 14, 2011).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' August 17, 2012 motion for default judgment (Doc. No. 10) be granted;

2. The district court enter a default judgment against defendants Antigua Cantina & Grill, LCC and Felipe Olvera, Jr.;

3. Defendants, their agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502;

       4.  Defendants be directed to pay plaintiffs a total award of $24,425, comprised of an award of $18,000 in statutory damages pursuant to 17 U.S.C. § 504(c), and $6,425 in attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

       5.  Defendants be ordered to pay interest on the full amount of this judgment from the date of entry of judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.civil\broadcast1196.mdj.f&r